## Richard C. Gunning, Assessor, v. John J. Sheahan, Supervisor.

1. PRACTICE—*Verification of Petitions by Affidavits on Information and Belief.*—An affidavit to a petition for mandamus stating that "the several matters and things in the said petition named are true to the best of the knowledge, information and belief" of the affiant, is wholly insufficient and a mandamus should not be issued on a petition so verified.

2. MANDAMUS—*General Rule as to Issuance of.*—If it would prove vain and fruitless or useless, if it can not have a beneficial effect, or if the relator has not a clear right thereto, a writ of mandamus will not be awarded.

3. SAME—*A Mandamus Held Improperly Issued.*—The supervisor of a town filed a petition for a mandamus against the assessor of such town, requesting that such assessor be required to produce his books before such supervisor, and assessor and the town clerk acting as a board of review of assessment and eight days after said board of review had adjourned *sine die*, after the date fixed by law for the assessor to return his books, and after the county board had met for the purpose of performing its duty as a board of equalization a mandamus was ordered to be issued. Held on appeal that it was a vain and useless thing to require the assessor to produce his books at the time mentioned and that the mandamus should not have been issued.

**Mandamus.** Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1897. Reversed. Opinion filed January 6, 1898.

EDWARD H. MORRIS, attorney for appellant.

The affidavit to the petition is insufficient in that it states that the several matters and things in said petition named are true to the best of his (affiant's) knowledge, information and belief. Deimel v. Brown, 35 Ill. App. 303; Siegmund v. Ascher, 37 Ill. App. 122.

A person seeking a writ of mandamus should show himself by his petition to be clearly entitled to the writ, *i. e.*, to have the act done which, or service performed by the person against whom he seeks the writ. People ex rel., etc., v. Mayor, 51 Ill. 27; People ex rel. v. Hatch, 33 Ill. 9; People ex rel. v. City of Chicago, 27 Ill. App. 217.

Under our present practice the petition takes the place of an alternative writ and if it does not state a *prima facie* case, a demurrer to the answer will be carried back and operate as a demurrer to the petition. People ex rel. v. Hatch, 33 Ill. 9; People ex rel. v. McCormick, 106 Ill. 188.

A mandamus will be refused where it is manifest that it must be "vain and fruitless or useless, or can not have a beneficial effect." Thus where a petition was filed for mandamus to compel the admission of a child

to a school, and it appeared by the return that the school had adjourned for the term, it having adjourned one day after the petition was filed, the petition was denied. Christman v. Peck et al., 90 Ill. 150; Swigert v. County of Hamilton, 130 Ill. 549; Klokke v. Stanley, 109 Ill. 197.

Where the relief asked for, if granted, would be of no practical benefit to the relator—"a writ of mandamus is always refused." People v. Guthrie, 46 Ill. App. 124.

The board of review adjourned *sine die* July 2, 1897, and had not met since. This was shown by the answer of appellant, and admitted by the demurrer. The hearing of the demurrer took place July 10, 1897. Of what practical benefit could be the granting of the writ at that time? There was no board of review before which the defendant could produce the books. There was no duty of any sort or kind as a member of such board that petitioner Sheahan had to perform. The work of the board of review was complete and the granting of the writ must be fruitless and of no effect.

The answer of the defendant was sufficient.

It was within the power of the two members, the assessor and clerk of the board of review to transact the business before that body and finally adjourn as they did. State v. Sullivan, 43 Ill. 412; R. S., Sec. 86, Ch. 120.

Mandamus will not lie to compel an officer to do an act not clearly demanded by law. Pucket v. White, 22 Tex. 559; 14 Am. and Eng. Ency. of Law, 102.

Where by reason of a complication of extraneous circumstances not specifically provided for by statute, a well founded doubt arises either as to the right of the applicant to have the thing demanded or the duty of the officer to perform it, mandamus is not the proper remedy. The right in such case being doubtful the

claimant must resort to some other remedy. People v. Johnson, 100 Ill. 543.

The relators' right to the writ must be clear, otherwise it will be denied. People v. Davis, 93 Ill. 133; Dement v. Rokker, 126 Ill. 174; Lavalle v. Soucy, 96 Ill. 467.

Lawrence P. Boyle, attorney for appellee.

In counties under township organization the assessor, clerk and supervisor constitute the board of review. It is their duty to meet on the fourth Monday of June for the purpose of revising assessments of property. And on the application of any person feeling himself aggrieved they shall revise the assessment and correct the same as may appear to them just. Any two of such officers meeting are authorized to act and they may adjourn from day to day until they have finished hearing all of the cases presented to them. R. S., Ill. Sec. 86, Ch. 120.

The language of the statute "may adjourn from day to day" is imperative.

Permissive words used in a statute authorizing a thing to be done are often found to be directory and compulsory, particularly when the power and authority is given in order that it may be exercised for the public benefit and the interest of the public required the authority to be acted upon; and in such case the performance of the duty will be enforced by mandamus Wood on Mandamus, p. 46; Southerland, Stat. Cons. Ch. 15, Secs. 460, 461, 462.

Section 86, *supra*, provides that such board may adjourn from day to day so long as there remains unfinished business before it.

The statute prescribing such meeting is not merely directory but is imperative, as much so as that the

property should be regularly assessed by the assessor. It was a tribunal established by law to which the owner of property might appeal from the valuation made by the assessor with authority to reduce the assessment. A right to a hearing before these revisors was granted by the law to all taxpayers, and if deprived of this right, they not be bound by the assessment. The right of the owner of land to raise objections of this character has been repeatedly settled by the decisions of this court and will not be reconsidered now. Hough v. Hastings, 18 Ill. 312.

The board could not adjourn so as to avoid the power of the court to compel the performance of a duty. State ex rel. Smith v. McClinton, Judge, 48 Pac. Rep. 740.

"Mandamus will lie to compel a court to hear and determine a case which it has improperly dismissed if within its jurisdiction." State ex rel. Smith v. McClinton, Judge, 48 Pac. Rep. 740.

We may command an inferior court to give judgment in a case fit and proper for its cognizance.

The judge of the Oneida Common Pleas v. The People, 18 Wend. 79.

The proper function of a writ of mandamus is to require a tribunal of special, peculiar or inferior jurisdiction to take cognizance of a case properly brought before them and decide upon it one way or the other. Smith v. Mayor and Aldermen of Boston, 1 Gray, 72.

Where a canvassing board has adjourned without finishing the business before it, the court will compel it to complete the canvass. Ex rel. Bloxham v. Gibbs, Secretary of State, 13 Fla. 55; Wood on Mandamus, 9.

We understand the general rule to be that when a statute imposes a specific duty, either in express terms or by fair implication and there is no other specific or adequate remedy, a writ of mandamus may be awarded

to compel the performance of the duty.  People ex rel. v. State Ins. Co., 19 Mich. 392.

It is no answer to say that the board had adjourned, that the time has gone by for the performance of a public duty.  Brown v. County Treasurer, 54 Mich. 132.

The act which the appellant was called upon to perform concerned the public interest and was such as the law clearly intends that the assessor should perform, if called upon, as he was in this case; and having refused, the writ of mandamus was properly issued to compel him to do so.  State of Nevada v. Hobark, 12 Nev. 408.

The petitioner was without any other adequate remedy for the enforcement of his right as a part of the board of review to have the books before him, and the two other members of the board could not by resolution deprive him of this right.  Brewer, Auditor, v. Watson, 61 Ala. 310.

Mandamus will lie to compel the county treasurer to permit the inspection of liquor bonds.  Brown v. County Treasurer, 54 Mich. 132.

And when it is the duty of a public officer having custody of certain books and records to permit persons authorized by law to inspect them and to make copies or extracts therefrom, mandamus is the approved remedy to compel the performance of this duty.  High, Ex. L. Rem. (3 Ed.), Sec. 74.

It is not essential that he should be capable of legally maintaining or defending an action in his own private behalf, but it will entitle him to inspection if he may act in such suit as a representative of a common or public right.  State ex rel. Ferry v. Williams, Collector, etc., 41 N. J. L. 332.

The petition shows that the appellee had a right, in the discharge of his duties as a member of the board of review, to inspect the books in which assessments were

made in order that he might see, first, if an assessment
had been made; second, if made, the petition shows
that he needed the aid of an inspection of the books in
passing judgment on the complaints. Ex parte Briggs,
1 Ellis & Ellis, 881.

MR. JUSTICE WINDES DELIVERED THE OPINION OF THE
COURT.

Appellee individually, and as supervisor of the town
of South Chicago, on June 30, 1897, filed in the
Superior Court of Cook County his petition for a writ
of mandamus against appellant as assessor of the town
of South Chicago, asking that a writ of mandamus issue
commanding said appellant Gunning forthwith to
bring the books of assessment of said town containing
valuations and assessments of properties referred to in
the complaints filed before the board of review of said
town, as set forth in said petition, and produce said
books before said board for its inspection and for the
inspection of petitioner, as presiding officer of said
board and as an individual member thereof.

Said petition alleges that the petitioner was elected,
and at the time of filing said petition, was the duly
qualified and acting supervisor of said town; that
appellant and one Barnett were also elected, and were
then the duly qualified and acting assessor and town
clerk, respectively, of said town, and that under the
statute of this State, the three, petitioner, said Gunning
and said Barnett, were constituted a board of review of
said town, for the purpose of revising assessments of
property in said town, setting forth the duties of such
board in that regard under the law; that it was neces-
sary in the performance of their duties as a board, and
of the duties of petitioner as chairman of said board, to
examine said books of assessment, which should show
valuations and assessments of property made by said

assessor, in order that said board might intelligently perform its duties in revising such assessments, setting forth facts tending to show that such necessity existed, and that a large number of complaints by property owners of their assessments of property by said Gunning had been presented to said board; that said Gunning, after a motion to that effect, made at a regular meeting of said board on June 28, 1897, had passed said board, and after request by petitioner as chairman of said board, refused to produce said assessment books before the board at its regularly adjourned meeting on June 29, 1897, at 10 A. M.; but there is no allegation in the petition that said board adjourned to any time after said June 29, or that said board would be thereafter convened for any purpose.

The affidavit to said petition is as follows:

"STATE OF ILLINOIS, } ss.
  "County of Cook,

"John J. Sheahan, the petitioner in the foregoing petition named, being first duly sworn, says that the several matters and things in the said petition named are true to the best of his knowledge, information and belief.                    "JOHN J. SHEAHAN.

"Subscribed and sworn to before me this 30th day of June, A. D. 1897.
                    "JOHN A. LINN, Clerk."

Process of summons was issued by said Superior Court, returnable July 6, 1897, and served on appellant July 1, 1897, and he was ordered to answer on or before July 8, 1897, at 10 A. M.

Appellant filed his answer July 7, admitting the official character of the several persons as stated in the petition, the meetings of the board of review as therein set forth, and the passage of the motion to produce

books, as alleged, and also alleges that it was agreed by said board, after said motion was passed, and after a statement to said board had been made by the said Gunning that it would greatly inconvenience the business of said Gunning as assessor to produce said books before the board, that he, said Gunning, should furnish to said board on June 28, 1897, a statement in writing, signed by him as assessor, showing the information desired by said board, so far.as it was contained in said books of assessment in his hands, which statement said Gunning, it is alleged, furnished to said board at its meeting at 2 P. M., on June 28, 1897; and further alleges that at the meeting of said board on June 29, 1897, the other members of said board informed said Sheahan that they did not wish said books produced before the said board—that they did not want them; and said Sheahan thereafter declared said board adjourned to June 30, 1897, at 10 A. M., without any motion or vote whatever to that effect; that at a meeting of said board held July 2, 1897, all the members thereof being present, a motion was made and passed, that all complaints and petitions of property owners filed before the board, not theretofore disposed of, be dismissed, said appellee declining to vote on the said motion;· that thereafter, on the same day, on motion duly made and seconded to that effect, said board passed· the motion by the votes of said appellant and said Barnett, said Sheahan declining to vote; that said board adjourn *sine die*, and said board was then and there adjourned without day; and the answer further alleges that since said July 29, 1897, said board has not met.

Said answer further alleges that said petition is insufficient to entitle petitioner to any relief, and prays the same advantage by said answer as if appellant had specially demurred to the same.

Petitioner demurred generally to said answer, which

demurrer was sustained by the court. Appellant excepted to the ruling of the court and elected to stand by his answer, whereupon the court ordered that a mandamus issue, as prayed for in the petition, directing said Gunning, assessor, to bring said books of assessment containing valuations and assessments of property referred to in the complaints filed by the said board, and produce said books before said board for its inspection and for the inspection of said petitioner as presiding officer and as an individual member of said board, on thirteenth day of July, A. D. 1997, at 10 o'clock A. M.

The error assigned is, that the court erred in sustaining the demurrer to said. answer, and in ordering the writ of mandamus as above stated.

The affidavit to said petition was no affidavit in fact —was wholly insufficient, and the mandamus should not have been ordered on said petition verified as it was. Merrill on Mandamus, Secs. 246 and 248; Moses on Mandamus, 205; Queen v. Cory, 3 Salk. 230; 3 Blackstone's Commentaries, 111, Cooley's Ed.; Postmaster v. Trigg, 11 Peters (U. S.), 173; 14 Am. and Eng. Ency. of Law, 227; Fisher v. City of Charleston, 17 W. Va. 603; State v. School Dist., 8 Neb. 98; Burgess v. Martin, 111 Ala. 657; People v. City of Chicago, 25 Ill. 485; Deimel v. Brown, 35 Ill. App. 303; Heffron v. Rice, 40 Ill. App. 253; Earle v. Earle, 60 Ill. App. 363.

In the case of People, etc., 25 Ill. 485, *supra*, the Supreme Court said, quoting from Tapping on Mandamus: " 'Where the writ (mandamus) is asked upon a supposed failure of duty, then the court requires an affidavit, for such a writ is never granted merely for the asking. Some reason must be assigned for it, which is done by the disclosure of a sufficient case upon affidavit.' This rule seems to be fully sustained by long and well recognized practice."

But inasmuch as there may be some question as to whether appellant has not waived this objection by answering the petition we proceed to consider whether there was error in awarding the peremptory writ of mandamus for other reasons. If it would prove vain and fruitless or useless, or if it can not have a beneficial effect, or the relator has not a clear right thereto, the writ of mandamus will not be awarded. Cristman v. Peck, 90 Ill. 150; Swigert v. County of Hamilton, 130 Ill. 549; Gormley v. Day, 114 Ill. 185; People, etc. v. Mayor, 51 Ill. 27; People v. Town of Mount Morris, 145 Ill. 430; Dement v. Rokker, 126 Ill. 174; People v. Soucy, 26 Ill. App. 507; People v. Johnson, 100 Ill. 543.

In the Cristman case, *supra*, the writ was refused because it was sought to compel school directors to admit relator's children to school, and it appeared that the term of school expired on the day process was served, and the first term of court at which there could be a hearing was more than two months later.

In the Swigert case, *supra*, which was to compel the auditor of public accounts to issue a warrant for an unliquidated amount, the writ was refused because it would be wholly unavailing, as the state treasurer could not have paid such a warrant.

In the Gormley case, *supra*, which was to compel Day, the clerk of the village of Glencoe, to post copies of an ordinance passed by said village on January 3, 1882, vacating certain streets, the writ was refused by the Superior Court, and this judgment was affirmed, because it appeared that on January 12 and 24, 1882, by two separate resolutions, the ordinance in question was repealed.

In the Soucy case, *supra*, the Supreme Court say: "A writ of mandamus will be awarded only in a case where the party applying for it shows a clear right to

Gunning v. Sheahan.

have the defendant do the thing which he is sought to be compelled by mandamus to do; the petition must show upon its face a clear right to the relief demanded, and every material fact on which the petitioner relies must be distinctly set forth."

In the Johnson case, *supra*, the Supreme Court say: "While the remedy of mandamus rests largely in the discretion of the courts, yet the rule is uniform and inflexible that the writ will not be granted unless the relator's right to it is clearly established."

In the Dement case, *supra*, the Supreme Court say: "The rule is familiar that to entitle a party to the writ of mandamus, he must show a clear right to relief sought; if the right be doubtful, the writ will not be awarded."

In the case of Town of Mount Morris, *supra*, the Supreme Court, speaking of when this writ may be issued, say: "It (the petition) must set forth a clear right upon the part of the relator to have the act performed, and set forth every material fact showing that it is the duty of the persons sought to be coerced to perform that act." And the court in the same case further holds that although the petition may have been answered, the answer must be treated simply as a demurrer to the petition, when it makes no issue of fact, and that the right of the relator to the peremptory writ of mandamus must always be determined from the face of the petition itself.

The Revised Statutes, Ch. 120, Sec. 86, provide as follows:

"In counties under township organization, the assessor, clerk and supervisor of the town shall meet on the fourth Monday of June for the purpose of revising the assessment of property in such town. And on the application of any person considering himself aggrieved, or who shall complain that the property of another is

assessed too low, they shall revise the assessment and correct the same as shall appear to them just. No complaint that another is assessed too low shall be acted upon until the person so assessed or his agent shall be notified in writing of such complaint, if a resident of the county.

"Any two of such officers meeting are authorized to act, and they may adjourn from day to day upon notifying those present of the date to which they adjourn until they shall have finished the hearing of all cases presented to them.

"Property assessed after the fourth Monday of June, and all other property whereof the owner or his agent has made application to the town board to have the assessment on the same revised as provided by this section, and has given notice in writing to said board that he will appeal from its decision to the county board, shall be subject to complaint to the county board, and the county board shall revise and correct the assessment upon the same upon application of the owner or his agent, as provided by Section 97 of this act, and if it shall appear that the same has been assessed higher in proportion than other lands in the same neighborhood, the county board shall revise and correct the same and make such reduction in said assessment as shall be just and right."

Section 87 of the same chapter provides that the assessor shall cause ten days notice of the time and place of the meeting provided for in the previous section, to be given by posting notices in at least three public places in said town; and Section 88 provides that the failure to give such notice of holding said meeting shall not vitiate the assessment, except as to the excess of valuation or tax thereon, shown to be unjustly made or levied.

Section 90 of the same chapter provides: "The assessor shall, on or before the first day of July of the

year for which the assessment is made, return his assessment books to the county clerk, verified by his affidavit, etc."

Section 97 of the same chapter, provides that: "The county board at a meeting to be held for the purpose contemplated in this section, on the second Monday in July, annually after the return of the assessment books, shall first assess all such lands or lots as have been listed by the county clerk, and not assessed by the assessor. Said board may make such alterations in the descriptions of real property as it shall deem necessary. Second, on the application of any person considering himself aggrieved, or who shall complain that the property of another is assessed too low, they shall review the assessment and correct the same as shall appear to be just. * * * Third, to hear and determine the application of any person who is assessed on property claimed to be exempt from taxation. * * * Fourth, it shall ascertain whether the valuations in one town or district bear just relation to all the towns or districts in the county, and may increase or diminish the aggregate valuation of property in any town or district," setting forth how the latter duty shall be performed.

Whatever may be said as to the action of said Gunning and Barnett (being the majority of the board of review), in dismissing as they did, on July 2, 1897, all the complaints and petitions not therefore disposed of by said board of review and adjourning the said board *sine die*, and also as to the right of petitioner to have said assessment books produced before said board, the fact remains that this petition is for the purpose of requiring the production of said assessment books before said board to enable it as a board to intelligently perform its duties as a reviewing board of assessments of property, but the petition fails to show that said

board would, at any time after the filing of said petition, meet again, and the order of the court requiring the production of said books was made (as is shown by the answer, which is admitted to be true by the demurrer thereto, and as shown by the order of court awarding the writ of mandamus itself), eight days after said board had, in the manner stated by the answer, completed its business (whether improperly, unlawfully or otherwise, is immaterial), and had adjourned *sine die.* It may be that it was the duty of Gunning, when the board of review was in session at any time prior to or on July 1, on request of a majority of the board, to produce his books, but in the case at bar that was waived by a majority of the board by their taking the statement of the assessor, and stating that they did not require that the books be produced—that they did not want the books.

The said board of review, however, is a creature of the statute. There is no provision of the statute which has been called to our attention, or which we have been able to discover, making it incumbent on the assessor to produce his books before said board; on the contrary, as above set forth, the statute provides* that he shall, on or before July 1 of the year for which the assessment is made, being the very day on which said Gunning was served with process, return his assessment books to the county clerk. Whatever might have been his duty when said board was in session prior to July 1, or on that day, he could not comply with his statutory duty to return the books to the county clerk on that day, and also twelve days thereafter, as directed by the order awarding the writ of mandamus, produce the books before said board of review.

The right of petitioner is certainly not a clear right, and even if it were a clear right the mandamus could have no really beneficial effect. It would be a vain

and useless thing to require these books to be produced on July 13, because it does not appear that there would be another meeting of the board, but on the contrary that the board had adjourned *sine die*, and because before that time, to wit, July 12, the second Monday in July, the county board would meet for the purpose of hearing appeals from the decisions of the town board of review to revise and correct the assessments complained of, as set forth in the petition.

What the power of the court might be if this were a proceeding to compel said Gunning and Barnett as members of the board of review, to meet with said petitioner and perform their duties as members of said board, in the consideration of the complaints filed by the different property owners, if the provisions of the statute were such that it could be done in time to be of avail to the property owners, would present a very different question to the one at bar. The province of this court is to pass upon the questions presented by this case, and none other.

The order awarding the writ of mandamus is reversed.